**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDRE MCGOWAN,** | ) | **CASE NO. 1:17CV2225** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE JEFFREY J. HELMICK** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **LYNEAL WAINWRIGHT,** | ) | **JONATHAN D. GREENBERG** |
| **Warden** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court

is the Petition of Andre McGowan  ("McGowan" or "Petitioner"), for a Writ of Habeas Corpus

filed pursuant to 28 U.S.C. § 2254.  McGowan is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v.*

*McGowan,* Ashtabula County Court of Common Pleas Case No. 2014CR378.  For the following

reasons, the undersigned recommends that the Petition be DENIED.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying McGowan's conviction as follows:

> {¶ 2} On March 15, 2014, Branch Manager, Crystal Fairbanks, and Teller,
> Cheryl Bennet–Root, were in the vault of the Key Bank, located in Geneva,
> Ohio. At 11:48 a.m., Fairbanks observed appellant as he leapt over the teller
> counter, landing approximately an inch or two from her. Appellant stated "I
> need money" two times and ordered both women to "get down." Appellant was
> wearing a white mask over his face, was dressed in black, with a black hoodie
> on his head, and wearing red and white shoes. The women advised appellant
> the money was in the vault after which he stated he needed a bag. Bennet–Root
> pointed to an orange carrier bag; appellant repeated the need for a bag.
> Bennet–Root retrieved the bag and handed it to appellant. When Fairbanks
> stood up to assist Bennet–Root, appellant ordered her to "get down" again.
> Appellant loaded the bag with $32,500, touched the women on the back stating
> "Thank you, ladies," and left the bank.

> {¶ 3} Neither women observed appellant with a weapon; Bennet–Root,
> however, testified she felt appellant possessed a weapon. Both women testified
> they were very frightened by the ordeal and felt threatened throughout the
> incident. They also testified they complied with appellant's orders because they
> believed appellant would harm them if they were uncooperative.

> {¶ 4} Shortly after appellant left, Officer Derrick Yopp of the Geneva City
> Police Department was dispatched to the location. The officer was unable to
> locate the suspect. He entered the bank and took statements from Fairbanks and
> Bennet–Root. The officer noted both women appeared frightened and had tears
> in their eyes.

> {¶ 5} On June 24, 2014, at 12:47 p.m., appellant entered the First Merit Bank
> in Geneva, Ohio. Appellant was "covered from head to toe" and wearing
> gloves. Bank Manager Wendy Doyle was at the tellers' counter and Bank
> Teller, Sandra Cowger, was assisting a customer at the drive-through window.
> Appellant jumped over the teller counter and ordered the women "get down on
> the f * * * ing ground." Appellant asked Doyle where the money was; Doyle
> directed appellant to the teller drawer where she was working. He removed the
> money and asked if there was any more. Doyle responded in the negative,
> thinking appellant was referring to her drawer. Appellant advised Doyle that
> she "better not be f* * * ing with [him]." Doyle then directed appellant to a
> separate teller drawer. He removed the money from that drawer, placed it in a
> garbage bag, told the women to have a nice day, and fled the bank. There was
> no evidence that appellant possessed a weapon during this incident.

2

{¶ 6} Doyle stated she complied with appellant's orders because he yelled at her and she did not want to be "beat up." Doyle testified that, even though appellant did not expressly threaten her with injury or death, she was afraid and believed a "threat was implied" when appellant stated, "you better not be f* * *king with me." Doyle also testified appellant appeared to have great strength given the manner in which he bounded over the teller line. Because appellant's face was covered, Doyle believed appellant was not concerned about the consequences of his actions. She testified that, given the circumstances of the incident, "if he's desperate enough to rob a bank he's desperate enough to hurt us to do it."

{¶ 7} Further, Cowger testified she immediately dropped to the floor upon appellant's order. Cowger stated she was in fear because appellant's command was "very stern and demanding." She remained on the floor until appellant left the bank because she "was in fear for [her] life, and wasn't willing to take that chance ."

{¶ 8} After appellant left the bank, Doyle ran out the door to obtain a description of his vehicle and lock the entrance. Doyle subsequently called 911. After an audit, the bank determined appellant took $3,507 from Doyle's drawer and $3,654 from the other drawer.

{¶ 9} Officer Joe Cooper of the Geneva City Police Department was dispatched to the bank as a result of the incident. Dispatch advised the officer that there was a witness following the suspect's vehicle. He received a description of the vehicle and proceeded to its location. After locating the vehicle, he initiated a traffic stop, but waited for backup before approaching.

{¶ 10} Once Officer Cooper made contact with the vehicle, he observed a woman driving with appellant as the passenger. The officer noted red dye on the back seat and money on the floor board with dye on it. There were black parachute pants on the rear floor board and a gray hoodie. White gloves were also on the rear floor board of the vehicle. $4,811 was found spread throughout the vehicle.

{¶ 11} Officer Roger Wilt of the Geneva City Police Department was on patrol on June 24, 2014, when he observed paper money on the roadway. He exited his cruiser and noticed a plastic bag stuffed with cash and a blue hat. He observed a trail of money with red dye throughout the street. He contacted dispatch and was advised of the First Merit Bank robbery.

{¶ 12} Eventually, after his arrest, appellant was interviewed by Officer Wilt. Appellant advised the officer that his girlfriend drove him to the bank and he had her park the vehicle. After donning his hoodie, he exited the vehicle, put

3

a red bandana on his face, and a hat on his head. Appellant admitted he jumped over the tellers' counter and ordered the two tellers to the get to the floor. After taking money from the drawers, he fled the bank with the money in a garbage bag. Shortly after he and his girlfriend left the scene, the dye pack exploded and they had difficulty breathing. Appellant advised his girlfriend to pull over and he threw the bag of money out of the car along with his blue hat and red bandana.

{¶ 13} Appellant additionally confessed to the March 15, 2014 robbery. He explained he drove himself to Geneva, parked across from the Key bank, and left his vehicle running while he entered the bank. He stated he jumped on the counter, and ordered the tellers to help him place money in a bag. He then fled the scene from the same door he entered. He confessed he took $32,000 from the robbery. He stated he was wearing a black hoodie, black pants, and red and white Nike shoes at the time of this incident.

{¶ 14} Appellant was indicted for two counts of robbery, in violation of R.C. 2911.02, felonies of the third degree (one for each incident); two counts of kidnapping, in violation of R.C. 2905.01, felonies of the second degree (one for each incident); one count of theft, in violation of R.C. 2913.02, a felony of the fifth degree (relating to the June incident); and one count of grand theft, in violation of R.C. 2913.02, a felony of the fourth degree (relating to the March incident).

*State v. McGowan*, 2015 WL 6449139 at * 1-3 (Ohio App. 11th Dist. Oct. 26, 2015).

## II. Procedural History

### A. Trial Court Proceedings

In July 2014, the Ashtabula Grand Jury indicted McGowan on (1) two counts of robbery in violation of Ohio Rev. Code § 2911.02(A)(3) (Counts One and Four); (2) two counts of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2)(C)(1) (Counts Two and Five); (3) one count of theft in violation of Ohio Rev. Code § 2913.02(A)(1)(B)(2) (Count Three); and (4) one count of grand theft in violation of Ohio Rev. Code § 2913.02(A)(1) (Count Six).  (Doc. No. 10-1, Exh. 1).  The indictment involved two separate bank robberies, occurring on June 24, 2014 and on March 15, 2014.  (*Id*.)  Counts One, Two and Three related to the June 24, 2014

4

incident, while Counts Four, Five and Six related to the March 15, 2014 incident.  (*Id.*)

McGowan pled not guilty to all charges.  (Doc. No. 10-1, Exh. 3.)

On September 4, 2014, McGowan filed a Motion to Suppress statements taken from him during interrogation, on the grounds the statements were not voluntary and were obtained by the use of coercive police activity.  (Doc. No. 10-1, Exh. 4).  On that same date, McGowan also filed a Motion to Exclude Any Evidence Relating to Other Crimes, Wrongs, or Acts.  (Doc. No. 10-1, Exh. 5.)  The State opposed both motions.  (Doc. No. 10-1, Exh. 6.)

The state trial court conducted a hearing on McGowan's Motion to Suppress on October 8, 2014, during which it denied McGowan's motion.  (Doc. No. 10-1, Exh. 7; Doc. No. 10-2.)

McGowan also filed a Motion for Relief from Prejudicial Joinder, in which he asked for separate trials regarding the June 24, 2014 incident that formed the basis of Counts One, Two and Three, and the March 15, 2014 incident that formed the basis of Counts Four, Five, and Six.  (Doc. No. 10-1, Exh. 8.)  The State opposed the motion.  (Doc. No. 10-1, Exh. 9.)

On October 14, 2014, the state trial court granted McGowan's motion and ordered that "separate trials should be set for the two separate dates charged in the indictment."  (Doc. No. 10-1, Exh. 10.)

Shortly thereafter, on October 27, 2014, McGowan filed a Motion for Discharge Speedy Trial Violation and a Motion for Discharge Crim. R. 3 Violation.  (Doc. No 10-1, Exhs. 11, 12.)  The state trial court denied both motions.  (Doc. Nos. 10-1, Exhs. 13, 14.)

 A jury trial was conducted on Counts One, Two and Three on October 27 and 28, 2014.  (Doc. No. 10-1, Exh. 16.)  McGowan was found guilty of robbery as charged in Count One and theft as charged in Count Three, but was found not guilty of kidnapping as charged in Count

Two.  (Doc. No. 10-1, Exh. 16.)

A jury trial was thereafter conducted on Counts Four, Five and Six on December 8 and 9, 2014.  (Doc. No. 10-1, Exh. 19.)  McGowan was found guilty of all charges.  (*Id.*)

The trial court conducted a sentencing hearing on February 6, 2015.[1]  (Doc.  No. 10-1, Exh. 20.)  The court determined that Counts One and Three merged for purposes of sentencing, and the State elected to proceed on the robbery charged set forth in Count One.  (*Id.*)  The court further determined that Counts Four, Five and Six merged for purposes of sentencing, and the State elected to proceed on the kidnapping charge set forth in Count Five.  (*Id.*)  McGowan was sentenced to a term of 36 months imprisonment on Count One, and a term of 7 years imprisonment as charged in Count Five.  (*Id.*)  The trial court determined the sentences should be served consecutively, for an aggregate prison term of 10 years.  (*Id.*)  In addition, the trial court imposed post-release control for a period of five years.  (*Id.*)

## B.     Direct Appeal

On February 27, 2015, McGowan, through new counsel, filed a timely notice of appeal to the Eleventh District Court of Appeals of Ohio ("state appellate court").  (Doc. No. 10-1, Exh. 21.)  In his appellate brief, McGowan raised the following assignments of error:

> I.     The trial court erred to the prejudice of the Appellant by failing to grant the Appellant's Motion for a Mistrial, in violation of the Appellant's constitutional rights.
>
> II.    The Appellant's conviction for robbery in violation of Ohio Revised Code Section 2911.02 is neither supported by the sufficiency of the evidence nor the manifest weight of the evidence on both robbery counts.

---

[1] The trial court conducted a single sentencing hearing as to McGowan's convictions in both trials.

6

(Doc. No. 10-1, Exh. 22.)  The State filed a brief in response.  (Doc. No. 10-1, Exh. 23.)

On October 26, 2015, the state appellate court affirmed McGowan's convictions.  (Doc. No. 10-1, Exh. 24.)  *See also State v. McGowan*, 2015 WL 6449139 (Ohio App. 11th Dist. Oct. 26, 2015).

On February 10, 2016, McGowan, proceeding *pro se*, filed a Notice of Appeal and Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio.  (Doc. No. 10-1, Exhs. 25, 26.)  On April 20, 2016, the Supreme Court of Ohio denied McGowan's Motion for Delayed Appeal and dismissed the case.  (Doc. No. 10-1, Exh. 27.)

**C.      Post-Conviction Filings– September 2015**

While McGowan was pursuing his direct appeal, he also filed several Petitions for Post-Conviction Relief.  On September 23, 2015, McGowan filed a Petition for Post-Conviction Relief in the state trial court, in which he raised the following grounds for relief:

> I.    Petitioner was denied Due Process and a Fair Trial when the Indictment only contained one case number and Trial Court ordered two separate trials.
>
> II.   Petitioner was denied Due Process of law under the 14th Amendment of the U.S. Constitution & Article 1, Section 10 of the Ohio Constitution in Assuming Jurisdiction over the Robbery, Kidnapping, & Grand theft charges.  The Filing of a valid complaint is a necessary prerequisite to a court's Acquiring Jurisdiction.  The failure to present a properly sworn Affidavit is a defect that deprives a court of subject matter Jurisdiction & cannot be waived by a defendant.  An unsworn complaint is  void & any conviction resulting therefrom will be void also 11th District.  *State v. Turner*, 2011-0hio-3481 2011 Ohio App. LEXIS 3585.  *State v. Davies*, 2013-Ohio-436; 2013 Ohio App. Lexis 385.

(Doc. No. 10-1, Exh. 28)  McGowan also appeared to assert ineffective assistance of "trial/appellate counsel" for failing to raise these issues.  (*Id*.)

On that same date, McGowan filed a "Petition to Vacate or Set Aside Sentence" in the

7

state trial court, in which he raised the following grounds for relief:

> I. Once case number, two jury trials constitute Double Jeopardy.  Acquitted of kidnapping in first trial (October 27, 2014) and found guilty Dec. 8, 2014.
>
> II. No issuance of a valid complaint. Lacks subject matter jurisdiction. No complaint given or properly sworn affidavit.  Counsel's failure to raise the issue of lack of jurisdiction to try defendant amounts to ineffective assistance of counsel.

(Doc. No. 10-1, Exh. 29.)  The State filed a motion to dismiss both petitions, which McGowan

opposed.  (Doc. No. 10-1, Exhs. 30, 31.)

On January 26, 2016, the state trial court granted the State's motion to dismiss

McGowan's Petitions.  (Doc. No. 10-1, Exh. 32.)

McGowan thereafter filed a Motion for Reconsideration on June 10, 2016.  (Doc. No.

10-1, Exh. 33.)  The state trial court denied the motion on July 7, 2016.  (Doc. No. 10-1, Exh.

34.)

**D.    Application to Reopen Appeal under Ohio App. R. 26(B)**

Meanwhile, on January 21, 2016, McGowan filed a *pro se* Application to Reopen

Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 10-1, Exh. 35.)  In his Application,

McGowan argued his appellate counsel was ineffective for failing to raise the following

arguments:

> I. Appellate counsel Michelle French was ineffective for failure to raise issue of a valid complaint in violation of the 5th and 14th Amendments of the U.S. Constitution.
>
> II. Appellate counsel Michelle French was ineffective for failure to raise speedy trial violation on direct appeal in violation of the 6th Amendments of the U.S. Constitution.
>
> III. Appellate counsel Michelle French was ineffective for failure to raise

the courts denial of Defendant's Motion to Suppression violation of the 4th Amendments of the U.S. Constitution.

IV.     The Court abused its discretion and violated due process when the Judge and Prosecutor engaged in plea negotiations, in violation of the 6th Amendments of the U.S. Constitution.

V.      Defendant Andre McGowan was denied the effective assistance of appellate counsel in violation of the 5th and 14th Amendments of the U.S. Constitution.

Michelle French did not assign as error:

1)  The trial court committed  plain error by entering a judgment of conviction on count 2 Kidnapping  under R.C.2905.01(A) (2), with count 1 Robbery under R.C.2911.02(A)(3) as allied offenses of similar import. Robbery is the underlying predicate offense, and by sentencing Mr. McGowan  to 7-years for kidnapping that was committed  in connection with a 3rd degree  Robbery as part of the same act or transaction.

2) Trial Counsel  Virginia  Miller, was ineffective for failing to object to the trial courts error in sentencing  phase on merger issue. (*See State v. Lozada*, 2012-Ohio-8; 2012  Ohio  App. LEXIS.).   Kidnapping merger  with Agg. Robbery as noted  by the  Ohio Supreme court in *State v. Winn*, 121 Ohio St.3d 413, 905 N.E.2d  154, 2009-Ohio-l059. *State v. Jenkins*, 15 Ohio St.3d at 198, 15 OBR 311, 473 N.E.2d 264, FN 29; *State v. Stall*, 190 Ohio App.3d 581 (Ohio App.3 Dist 2010) Vacated  946  N.E.2d  756 (Ohio 2011) All Agg. Robberies.  In this case, lowest form of   Robbery 2911.02(A)(3) with a Kidnapping 2905.01(A)(2)  no lesser included offense was explained  to the Jury on Kidnapping charges -which is error.

VI.     Appellate counsel Michelle French was ineffective for failure to raise on direct appeal the imposed 5 years of post release control, in violation of the 5th and 14th Amendments of the U.S. Constitution.

(*Id.*)  The State file a brief in opposition on February 19, 2016.  (Doc. No. 10-1, Exh. 36.)

On May 23, 2016, the state appellate court granted McGowan's application in part, finding merit in his Sixth Assignment of Error that appellate counsel was ineffective for failing to argue the trial court erred in imposing five (instead of three) years of post-release control.

9

(Doc. No. 10-1, Exh. 37.)  The state appellate court considered and denied McGowan's other assignments of error, and remanded the matter for resentencing in accordance with its ruling regarding post-release control.  (*Id.*)

On July 1, 2016, McGowan filed a *pro se* Notice of Appeal to the Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 38.)  In his Memorandum in Support of Jurisdiction, McGowan raised the following propositions of law:

I.  Appellate counsel Michelle French was ineffective for failure to raise issue of a valid complaint in violation of the 5th and 14th Amendments of the U.S. Constitution.

II.  Appellate counsel Michelle French was ineffective for failure to raise speedy trial violations on direct appeal in violation of the 6th Amendments of the U.S. Constitution.

III.  Appellate counsel Michelle French was ineffective for failure to raise the courts denial of Defendant's Motion to Suppression violation of the 4th Amendments of the U.S. Constitution.

IV.  The Court abused its discretion and violated due process when the Judge and Prosecutor engaged in plea negotiations, in violation of the 6th Amendments of the U.S. Constitution.

V.  Defendant Andre McGowan was denied the effective assistance of appellate counsel in violation of the 5th and 14th Amendments of the U.S. Constitution.

Michelle French did not assign as error:

1)  The trial court committed  plain error by entering a judgment of conviction on count 2 Kidnapping  under R.C.2905.01(A) (2), with count 1 Robbery under R.C.2911.02(A)(3) as allied offenses of similar import. Robbery is the underlying predicate offense, and by sentencing  Mr. McGowan  to 7-years for kidnapping that was committed  in connection with a 3rd degree  Robbery as part of the same act or transaction.

2)  Trial Counsel  Virginia  Miller, was ineffective for failing to object to the trial courts error in sentencing  phase on merger issue. (*See State v. Lozada*, 2012-Ohio-8; 2012 Ohio App. LEXIS.).  Kidnapping  merger

10

> with Agg. Robbery as noted  by the  Ohio Supreme court in *State v. Winn*,
> 121 Ohio St.3d 413, 905 N.E.2d  154, 2009-Ohio-l059. *State v. Jenkins*,
> 15 Ohio St.3d at 198, 15 OBR 311, 473 N.E.2d 264, FN 29; *State v. Stall,*
> 190 Ohio App.3d 581 (Ohio App.3 Dist 2010) Vacated 946  N.E.2d  756
> (Ohio 2011) All Agg. Robberies.  In this case, lowest form of  Robbery
> 2911.02(A)(3) with a  Kidnapping 2905.01(A)(2)   no  lesser included
> offense was explained  to the Jury on Kidnapping charges -which is error.

(Doc. No. 10-1, Exh. 39.)

On October 26, 2016, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 10-1, Exh. 40.)

**E.      Resentencing and Appeal from Resentencing**

On August 4, 2016, on remand from the state appellate court's decision partially granting

McGowan's App. R. 26(B) Application, the state trial court conducted a resentencing hearing at

which McGowan was again sentenced to an aggregate prison sentence of 10 years.  (Doc. No.

10-1, Exh. 41.)  In accordance with the state appellate court decision, the trial court imposed

post-release control for a period of three years.[2]  (*Id.*)

On September 1, 2016, McGowan, through counsel, filed a Notice of Appeal to the state

appellate court.  (Doc. No. 10-1, Exh. 46.)  McGowan's counsel then filed an *Anders* brief,

which raised the following potential ground for relief:

I.      Whether Appellant's sentence, particularly the trial court's findings under

---

[2] On that same date, McGowan, proceeding *pro se,* filed a (1) "Motion to Correct Void
Sentence for Failure to Comport with the Statutory Requirements of O.R.C. 2941.25;" and
a (2) "Motion to Alter, Amend, or Correct Judgment or in the Alternative Vacate Judgment."
(Doc. No. 10-1, Exhs. 42, 43.)  The State filed a brief in opposition on August 15, 2016.
(Doc. No. 10-1, Exh. 44.)  On October 5, 2016, the state trial court denied both motions.
(Doc. No. 10-1, Exh. 45.)

11

R.C. 2929.14(C)(4), was supported by the record.[3]

(Doc. No. 10-1, Exh. 47.)

On December 27, 2016, the state appellate court issued an Entry finding appellate counsel's *Anders* brief failed to include a certificate of service upon McGowan "so that he may have the opportunity to file a submission which raises any of his own points, if he so chooses." (Doc. No. 10-1, Exh. 48.) The court then ordered counsel to serve McGowan a copy of his appellate brief, as required by *Anders v. California*, 386 U.S. 738 (1967). (*Id.*)

On January 3, 2017, McGowan's appellate counsel filed a Notice of Service of his *Anders* Brief upon McGowan, in accordance with the state appellate courts' Entry and *Anders, supra*. (Doc. No. 10-1, Exh. 49.) The state appellate court gave McGowan thirty days to file his own submission. (Doc. No. 10-1, Exh. 50.)

On February 21, 2017,[4] McGowan filed a *pro se* appellate brief, in which he raised the following assignments of error:

I.  Trial court erred to the prejudice of the appellant and abused its discretion by failing to instruct the jury on the lesser- included offenses to kidnapping and robbery. In violation of the Due Process Clause of the

---

[3] Specifically, this assignment of error challenged the trial court's imposition of consecutive sentences on resentencing.

[4] Meanwhile, on January 9, 2017, McGowan filed a *pro se* Notice of Appeal and Motion for Leave to File Delayed Appeal in the state appellate court. (Doc. No. 10-1, Exhs. 58, 59.) McGowan's filings are unclear, but he appeared to be attempting to appeal from both his original sentencing entry (dated February 12, 2015) and his resentencing entry (dated August 9, 2016). On March 13, 2017, the state appellate court denied McGowan's motion, noting as follows: "[A]ppellant has already appealed the trial court's February 12, 2015 entry in *State v. McGowan*, 11th Dist. Ashtabula No. 2015-A-0015, 2015-Ohio-4430. In addition, appellant is appealing the August 9, 2016 entry in *State v. McGowan*, 11th Dist. Ashtabula No. 2016-A-0052, which is currently pending with this court." (Doc. No. 10-1, Exh. 60.)

14th , 5th and 6th Amendments of the United States Constitutions right to a fair and impartial trial.

II.   Trial court erred to the prejudice of defendant and abused its discretion in finding no 6th Amendment Speedy Trial violation. Overruling a motion to dismiss indictment based on a speedy trial violation.

III.  The trial court abused its discretion and erred to the prejudice of defendant-appellant in overruling motion to suppress confession. In violation of the Confrontation Clause and Due Process of the 4th, 5th, 6th & 14th Amendments to the United State Constitution.

IV.   Trial court lacks subject-matter jurisdiction to impose sentence and conviction for the improper Bind Over procedure for failure to award a affidavit-Complaint, and initiate a Preliminary Hearing. In violation of the Due Process Clause of the 14th Amendment and 6th Amendment right to fair and impartial trial.

V.    The trial court erred to the prejudice of Defendant-Appellant & abused its discretion in assuming subject-matter jurisdiction when Grand Jury indictment was never admitted into evidence & not sending indictment with jury during deliberations in violation of 6th Amendment fair & impartial trial and Due Process Clause of the 14th Amendment of the United States Constitution.

VI.   The trial court abused its discretion when it denied Defendant- Appellant due process of law under the 5th and 14th Amendments of the United States Constitution in assuming jurisdiction over the Robbery & Kidnapping complaints which were not properly executed in violation of Criminal Rule 3.

VII.  Trial court abused its discretion and erred to the prejudice of Defendant-Appellant by failing to merge kidnapping with robbery as allied offenses & sending allied offenses to jury after acquittal of first trial regarding same facts, violated the Doctrine of Collateral Estoppel & 5th, 6th Amendment Constitutional right to a fair trial & Due Process under the 14th Amendment of the United States Constitution.

VIII. Ineffective Assistance of trial counsel for filing a relief from prejudicial joinder in having trials separated under one indictment in violation of the 6th Amendment. Trial counsel Virginia Miller committed ineffective assistance of counsel for failing to object to curative instruction. Trial counsel Virginia Miller committed ineffective assistance of counsel in failing to support argument on speedy trial violation &

> Crim. R. 3 violation with U.S. & Ohio Constitution violation relying entirely on Ohio precedent. Ineffective assistance of trial counsel Virginia Miller allowed an inexperienced attorney who was only to assist as co-counsel to become lead counsel at Defendant's second trial.  In violation of defendant's 6th Amendment presumptive right to counsel of his choosing.

(Doc. No. 10-1, Exh. 51.)

On August 7, 2017, the state appellate court issued an Opinion in which it concluded "the instant appeal is wholly frivolous" and affirmed the trial court's judgment.  (Doc. No. 10-1, Exh. 52.)

On September 15, 2017, McGowan, proceeding *pro se*, filed a Notice of Appeal to the Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 53.)  In his Memorandum in Support of Jurisdiction, McGowan raised the following eight assignments of error:

> I. The trial court erred to the prejudice of the appellant and abused its discretion by failing to instruct the jury on the lesser-included offenses to kidnapping and robbery.  In violation of the Due Process Clause of the Fourteenth Amendment and Fifth and Sixth Amendment Right to a fair and impartial trial.
>
> II. Trial court erred to the prejudice of defendant and abused its discretion in finding no Sixth Amendment Speedy Trial violation.  Overruled a motion to dismiss indictment based on a Speedy Trial violation.
>
> III. Trial court abused its discretion and erred to the prejudice of defendant in overruling motion to suppress confess. (sic) Trial court committed plain error in allowing the out-of-court hearsay statement and confession to be admissible as evidence without having the opportunity to cross-examine the confession.  In violation of the Confrontation Clause & Due Process Clause & Fair and impartial trial of the 4th, 5th, 6th and 14th Amendments to the United States Constitution. Defendant-Appellant also contends ineffective assistance of trial counsel Virginia Miller & Alexandria Heinonan for failing to attack
> the credibility of the written confession at trial.
>
> IV. Trial court lacks subject-matter jurisdiction to impose sentence &

14

conviction for the improper bind-over procedure to the Grand Jury for indictment. And failure to award a affidavit-complaint, and initiate a Preliminary Hearing. In violation of the Due Process Clause of the 14th & 6th Amendments right to a fair and impartial trial.

V.    The trial court erred to the prejudice of Defendant-Appellant & abused its discretion in assuming subject-matter jurisdiction when Grand Jury Indictment was never admitted into evidence with jury deliberations. And elements inside jury instructions never went before Grand Jury. In violation of 6th Amendment fair & impartial trial and Due Process Clause of the 14th Amendment of the United States Constitution.

VI.   The trial court abused its discretion and erred to the prejudice of defendant-appellant when it denied Due Process of law under the 5th & 14th Amendments of the United States Constitution in assuming jurisdiction over the robbery & kidnapping complaints which were not properly executed in violation of Criminal Rule 3.

VII.  Trial court abused its discretion & erred to the prejudice of defendant-appellant by failing to merge kidnapping with robber as allied offenses and sending allied offenses to jury after acquittal of first trial. In violation of the Doctrine of Collateral Estoppel, R.C. 2941.25. Defendant's 5th, 6th Amendment right to a fair trial & due process clause under the 14th Amendment of the United States Constitution.

VIII. Trial counsel Virginia Miller & Alexandria Heinonan committed ineffective assistance of counsel when filing a Relief from Prejudicial Joinder in having trials separated under one indictment, constitutes double jeopardy resulting in violations of the 5th, 6th Amendment of the United States Constitution. Trial counsel Virginia Miller & Alexandria Heinonan committed ineffective assistance of counsel for failing to object to curative instruction. Trial counsel Virginia Miller committed ineffective assistance of counsel in failing to support argument on Speedy Trial violation & Criminal Rule 3 violation with United States & Ohio Constitutional violation. Relying entirely on Ohio precedent. In violation of Defendant's 6th and 14th Amendments to the United States Constitution. Trial counsel Virginia Miller committed ineffective assistance of counsel in allowing an inexperienced attorney (Alexandria Heinonan) w ho was only to assist as co-counsel to become lead counsel at Defendant's second trial. In violation of Defendant's 6th Amendment presumptive right to counsel of his choosing.

(Doc. No. 10-1, Exh. 54.)

On January 31, 2018, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct. Prac. R. 7.08(B)(4). (Doc. No. 10-1, Exh. 55.)

**F.      Second App. R. 26(B) Application**

Meanwhile, on November 1, 2017, McGowan, proceeding *pro se*, filed an Application to Reopen his appeal from his resentencing, pursuant to App. R. 26(B). (Doc. No. 10-1, Exh. 56.) In his Application, he set forth the following assignments of error:

I.      Appellate counsel Brian A. Smith was ineffective for filing an *Ander's* Brief and not filing complete transcripts in violation of the 6th and 14th Amendments Due Process and Equal Protection of the United States Constitution. (*Brady v. Maryland* violation & *United States v. Bagley*).

II.      Appellate counsel Brian A. Smith was ineffective for failure to raise Judicial Bias & Abuse of Discretion when trial court excused a juror for cause (Monica Taylor) without inquiring if the juror (Monica Taylor) had been coerced or influenced by anyone during lunch break regarding the trial of the defendant and without proper journalyzation and proper examination of all prospective jurors. Criminal Rule 24(B). Also resulting in plain error Crim. R. 52(B). R.C. 2945.25 & .29. In e [sic] 6th Amendment of the U.S. Constitution and Due Process and Equal Protection of Law of the 14th Amendment of the U.S. Constitution.

III.      Appellate counsel Brian A. Smith was ineffective for failure to raise issue of lesser-included offense on jury verdict form and proper Revised Code resulting in plain error and ineffective assistance of trial counsel for failing to object at trial to R.C. 2945.75 violation. And in direct violation of the 14th Amendment of the United States Constitution and Due Process and Equal Protection of Law.

IV.      Appellate counsel Brian A. Smith was ineffective for failure to raise issue of appellates [sic] conviction for kidnapping were not supported by sufficient evidence, the evidence was sufficient to convict appellant of unlawful restraint, or abduction in violation of a third degree felony. Kidnapping was also against the manifest weight of the evidence. In violation of the 14th Amendment of the United States Constitution. Due process and equal protection of law.

16

(Doc. No. 10-1, Exh. 56.)  The State filed a Brief in Opposition on November 16, 2017.  (Doc. No. 10-1, Exh. 57.)

The state appellate court docket reflects McGowan's Application for Reopening was denied on February 16, 2018.  (Doc. No. 10-1, Exh. 64.)

**G.      Post-Conviction Filings – August 2017**

On August 21, 2017, McGowan filed another *pro se* Petition for Post-Conviction Relief in the state trial court.  (Doc. No. 10-1, Exh. 61.)  Therein, he raised the following grounds for relief:

> I.      A constructive amendment requires that both the evidence presented and the jury instructions undermine the indictment.  This is a violation of the 4th Amendment right to be informed of nature & cause of the accusation and due process.
>
> II.      This court violated Defendnat's 4th Amendment right to due process when it failed to rule on pre-trial motion to exclude other acts evidence filed September 2014.

(*Id.*)  On that same date, he also filed motions for appointment of counsel and for expert assistance.  (Doc. No. 10-1, Exh. 62.)

On October 4, 2017, the state trial court denied McGowan's Petition as untimely or, in the alternative, barred by *res judicata*.  (Doc. No. 10-1, Exh. 62.)

On October 31, 2017, McGowan filed a Notice of Appeal to the state appellate court.  (Doc. No. 10-1, Exh. 63.)  According to the state appellate court docket, McGowan filed his appellate brief on January 16, 2018.  *See State v. McGowan*, Case No. 2017CA00077 (11th Dist. Ct. App. Ohio).  The State thereafter filed its Brief on February 5, 2018.  (*Id.*)  On June 11, 2018, the state appellate court affirmed the trial court's judgment.  (*Id.*)

On July 30, 2018, McGowan appealed to the Supreme Court of Ohio.  (*Id.*)  On October

17

25, 2018, that court declined to accept jurisdiction pursuant to S.Ct. Pr. R. 7.08(B)(4).  (*Id.*)

## H.    Federal Habeas Petition

On October 6, 2017,[5] McGowan filed a Petition for Writ of Habeas Corpus in this Court

and asserted the following grounds for relief:

**GROUND ONE**:    Appellant counsel Michelle French was ineffective for failure to raise issues of valid complaint.

**Supporting Facts**:    Trial court lacked subject matter jurisdiction when the Municipal Court failed to have the complaint signed under oath before binding charges over to the Grand Jury for indictment to the Common Pleas Court.

**GROUND TWO**:    Appellate counsel Michelle French was ineffective for failing to raise speedy trial violations.

**Supporting Facts**:    The Petitioner was indicted under (6) six counts.  Trial counsel files relief from prejudicial joinder under one indictment. The Petitioner was given (2) two separate trials in which (1) one trial was beyond the (90) ninety day time limitation.  Dec. 8, 2014 trial should have been dismissed.

**GROUND THREE**:    Appellate counsel Michelle French was ineffective for failing to raise the Court's denial of suppression motion.

**Supporting Facts**:    Petitioner asserts that while he did waive his *Miranda* rights prior to confessing to the First Merit Bank Robbery (occurring on June 24, 2014), he did not waive his rights prior to confessing to the Key Bank Robbery (occurring on March 15, 2014).  As only one waiver was provided and both confessions were not recorded.

**GROUND FOUR**:    Appellate counsel was ineffective for failing to raise

---

[5]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until October 20, 2017, McGowan states that he placed it in the prison mailing system on October 6, 2017.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on October 6, 2017.

> allied offense merger and lesser included offense on
> direct appeal.

**Supporting Facts**:    Trial court committed plain error by entering a judgment
of conviction on kidnapping with robbery as the
underlying predicate offense.  No lessor included offense
explained to the jury on kidnapping charges, which is
error.

(Doc. 1.)

On March 5, 2018, Warden Lyneal Wainwright ("Respondent") filed his Return of Writ.

(Doc. No. 10.)  McGowan filed a Traverse on May 7, 2018.[6]  (Doc. No. 12.)

### III.  Review on the Merits

**A.    Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S.Ct.

2059, 138 L.Ed.2d 481 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

---

[6]  Shortly thereafter, on May 11, 2018, McGowan filed a Motion for Appointment of
Counsel.  (Doc.  No. 13.)  The undersigned denied McGowan's Motion on May 21, 2018.
(Doc. No. 14.)

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ––– U.S. ––––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.  See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Williams v. Taylor,*

529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**B.**     **Analysis**

At the outset, the Court notes that McGowan attempts to raise, for the first time, a number of additional grounds for relief in his Traverse, including (1) ineffective assistance of

21

trial counsel for failing to challenge the credibility of McGowan's confession during the suppression hearing and the December 2014 trial (Doc. No. 12 at PageID#s 1132, 1134, 1143); (2) trial court error in limiting the cross examination of Detective Wilt during the December 2014 trial (*Id*. at PageID# 1143); (3) trial court error in failing to grant a mistrial (*Id*. at PageID# 1118); (4) ineffective assistance of appellate counsel Michelle French for failing to argue that McGowan's pretrial motions "should merge as an Interlocutory Order on appeal" (*Id*. at PageID#1145-1146); and (5) ineffective assistance of trial counsel for failing to request a lesser included offense instruction regarding the kidnapping charge (*Id.* at PageID# 1151).

None of the above claims are asserted in McGowan's Petition. Rather, as noted above, McGowan raised the above claims for the first time in his Traverse, which was filed nearly seven months after his Petition. He offers no explanation for his failure to either assert these claims in his Petition or timely seek leave to amend his Petition. Under similar circumstances, federal courts have declined to consider claims raised for the first time in a habeas petitioner's Traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."); *Berlanga v. Winn*, 2017 WL 4863171 at * 4 (6th Cir. May 11, 2017) ("A district court may decline, as the Court did here, to address an issue raised for the first time in a traverse."). *See also Wampler v. Haviland*, 2018 WL 6249681 at * 2 (N.D. Ohio Nov. 29, 2018); *Bolden v. Warden, Marion Correctional Institution*, 2018 WL 7021616 at fn 2 (N.D. Ohio Oct. 17, 2018); *Hammock v. Bracy*, 2018 WL 2208390 at * 6 (N.D. Ohio Feb. 20, 2018) ("[B]ecause Hammock's claim . . . was first presented in his Traverse, the claim is not properly before this

Court and need not be addressed.")  In light of the above, the Court finds that any claims raised

for the first time in McGowan's Traverse are not properly before the Court and, therefore, will

not be addressed.

### 1.  Grounds One through Four

In Grounds One through Four, McGowan asserts ineffective assistance of appellate

counsel based on counsel's failure to raise various arguments on direct appeal from his February

2015 sentencing.  (Doc. No. 1.)  These four grounds were timely raised in McGowan's first App.

R. 26(B) Application, filed January 21, 2016.  (Doc. No. 10-1, Exh. 35.)  The state appellate

court considered each of these claims on the merits and rejected them in its May 23, 2016

decision.  (Doc. No. 10-1, Exh. 37.)  McGowan timely appealed to the Ohio Supreme Court,

which declined jurisdiction.  (Doc. No. 10-1, Exhs. 39, 40.)  Thus, McGowan's four habeas

grounds are fully exhausted and ripe for habeas review.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that

his counsel's conduct was so below acceptable standards of representation that counsel was not

functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.

*See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A

petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's

defense to such an extent that it rendered the proceeding unfair.  *Id.*  To establish prejudice, the

"defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a

counsel's deficient performance must have "caused the defendant to lose what he otherwise

would probably have won" and it must have been "so manifestly ineffective that defeat was

snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington*, 562 U.S. at105.  *See also Kennedy v. Warren*, 428 Fed. Appx 517, 520 (6th Cir. May 3, 2011); *Phillips v. Sheldon,* 2014 WL 185777 at * 14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  *See also Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017).  An

24

appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *See Perry*, 908 F.2d at 59. Indeed, as the Sixth Circuit recently explained, the "'[m]ere failure to raise a potentially viable claim is not enough, as '[a]ppellate counsel need not raise every non-frivolous claim on direct appeal.'" *Hand*, 871 F.3d at 410 (quoting *Sanders v. Curtin*, 529 Fed. Appx. 506, 521 (6th Cir. 2013)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

### 1. Ground One

In his First Ground for Relief, McGowan argues appellate counsel was ineffective for failing to "raise issues of a valid complaint." (Doc. No. 1 at 5.) Specifically, he asserts the complaint charging him in connection with the First Merit Bank robbery was unsworn, arguing "the Complaint was not signed under oath in the municipal court of Geneva, Ohio before bonding over to Common pleas court of Ashtabula Country Grand Jury for a valid indictment." (Doc. No. 12 at 9.)

As noted *supra,* McGowan raised this claim in his first App. R. 26(B) Application, filed January 21, 2016. (Doc. No. 10-1, Exh. 35.) The state appellate court considered this claim on the merits and rejected it as follows:

> In order to establish a claim of ineffective assistance of appellate counsel, we apply the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). That is, appellant is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice.

Appellant's first proposed assignment of error provides:

"Appellate Counsel Michelle French was ineffective for failure to raise issue of a valid complaint in violation of the 5th & 14th Amendments of the U.S. Constitution."

Appellant argues appellate counsel was ineffective for failing to argue the robbery and kidnapping complaints, filed in the Western County Court, were not validly executed. Because the underlying charges were prosecuted by way of indictment, any potential error in the original complaints would be harmless as a matter of law. Accordingly, appellate counsel's performance was not deficient for not raising this issue on appeal. Appellant's first proposed assignment of error lacks merit.

(Doc. No. 10-1, Exh. 37.) *See also State v. McGowan*, Case No. 2015-A-0015 (11th Dist. Ct. App. Ohio May 23, 2016).

For the following reasons, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to challenge the validity of the complaint. As the state appellate court correctly noted, while a complaint was initially issued with regard to the First Merit Bank charges, those charges (along with the Key Bank charges) were later presented to the grand jury. The grand jury issued an indictment in July 2014 that formally charged McGowan with robbery, kidapping, and theft in connection with the First Merit Bank incident (Counts One through Three) and with robbery, kidnapping, and grand theft in connection with the Key Bank incident (Counts Four through Six). (Doc. No. 10-1, Exh. 1.) The state appellate court determined that, under these circumstances, any potential error in the complaint would be harmless as a matter of state law.[7] It is well-established that a state court's interpretation of state

---

[7] *See e.g., State v. Elder*, 2014 WL 2719682 at * 3 (Ohio App. 11th Dist. June 16, 2014) ("When the ultimate conviction is not based on an allegedly defective complaint in the municipal court but the criminal proceedings were 'predicated upon an indictment,' such defects were harmless and have no effect on the trial court's jurisdiction."); *State v. Porterfield*, 2013 WL 57883 at * 2 (Ohio App. 11th Dist. Jan. 7, 2013); *State v. Turner*, 2011

26

law binds a federal court sitting in habeas corpus.  *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Moreover, McGowan cites no authority (either state or federal) suggesting a criminal defendant is entitled to relief due to an alleged defect in a criminal complaint where the charges are subsequently presented to the grand jury and an indictment is issued.

Further, the Court notes McGowan has not argued, or shown, that he was not provided sufficient notice of the charges or that the indictment itself was otherwise defective.  It is well-settled "the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).  *See also Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Johnson v. Jenkins*, 2017 WL 4317147 at * 2 (6th Cir. April 27, 2017).  Nevertheless, the Supreme Court has recognized that a state defendant's right to fair notice and an opportunity to defend is protected by the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."); *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948).  In the habeas context, "due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'"[8] *Williams*, 467 F.3d at 535 (6th Cir.2006) (quoting *Koontz*, 731 F.2d at 369).  Here,

---

WL 3841925 at * 4 (Ohio App. 3rd Dist. Aug. 29, 2011).

[8] Fair notice has been given when "the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to

McGowan has not argued (and there is no suggestion) that the indictment failed to provide fair notice of the charges against him, either with respect to the First Merit Bank or Key Bank robberies.

Accordingly, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to challenge the validity of the complaint.  It is therefore recommended McGowan's first ground for relief be denied.

### 2.       Ground Two

In his Second Ground for Relief, McGowan argues appellate counsel was ineffective for failing to argue that his state and federal speedy trial rights were violated.  (Doc.  No. 1 at 7.)  He maintains that, "in the absence of any tolling event, the trial court had to find [him] guilty of Robbery, Kidnapping, and Grand Theft by September 23rd, 2014; i.e., the court had to find him guilty within 90 days of June 25th 2014 because the triple count provision applied initially." (Doc. No. 12 at 14.)  Because his second trial did not occur until December 8, 2014, McGowan argues his speedy trial rights were violated and his appellate counsel was ineffective for failing to raise this issue on direct appeal.  (*Id*.)

McGowan raised an ineffective assistance claim based on the failure to argue a speedy trial violation, in his first App. R. 26(B) Application filed January 21, 2016.  (Doc. No. 10-1, Exh. 35.)  The state appellate court considered this claim on the merits and rejected it as follows:

Appellant's second proposed assignment of error provides:

"Appellate Counsel Michelle French was ineffective for failure to raise speedy trial  violation  on direct  appeal in violation of  the 6th Amendment  of the U.S.

---

prepare for trial." *Koontz,* 731 F.2d at 369.  *See also Williams*, 467 F.3d at 535 (6th Cir. 2006); *Duncan v. Sheldon*, 2014 WL 185882 at * 25 (N.D. Ohio Jan. 15, 2014).

Constitution."

Appellant next asserts appellate counsel was ineffective for failing to raise a speedy trial issue. We do not agree.

Defense counsel filed a motion to dismiss the case on speedy trial grounds. The trial court denied the motion, concluding only 66 jail days were chargeable to the state for speedy trial purposes.

A review of the record demonstrates appellant was arrested on June 24, 2014; the speedy-trial clock began running on June 25, 2014. Appellant was brought to trial on October 27, 2014. 124 days elapsed between appellant's arrest and his trial. The judgment entry on sentence indicates appellant was held in jail during the pendency of the proceedings and, therefore, the state was required to bring him to trial within 90 days, pursuant to the triple-count provision of R.C. 2945.71(E). Although appellant was tried 34 days beyond the 90-day statutory period, there were various tolling events during the pendency of the case.

First, on July 31, 2014, appellant filed a request for discovery and a bill of particulars, to which the state responded on August 18, 2014. This tolled the speedy trial clock for 19 days. *See State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7949, syllabus ("A demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)."). Next, on August 28, 2014, appellant filed a second request for discovery, to which the state responded on September 12, 2014; this motion tolled the speedy trial clock for 15 days. *Id*. Finally, on September 4, 2014, appellant filed a motion for relief from prejudicial joinder and a motion to suppress evidence. The court granted the former motion and denied the latter motion on October 14, 2014. [fn 1, see below]. While appellant's motion was pending, the speedy trial clock was tolled for 40 days. *See* R.C. 2945.72(E) (The time within which an accused must be brought to trial is extended by "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused[.)")

Pursuant to the foregoing, appellant's speedy trial time was tolled for 74 days. Subtracting these days from 124, results in 50 days chargeable to the state. The court determined 66 days were chargeable. Irrespective of the arithmetical difference between the trial court's and this court's respective calculations, the record supports the trial court's judgment that appellant's right to a speedy trial was not violated. Appellate counsel was not ineffective for failing to raise this argument. Appellant's proposed assignment of error lacks merit.

FN1– "1. Because appellant's motion for relief from prejudicial joinder was granted, he was tried separately on the two distinct robberies that were the subject of his indictment. His second trial commenced on December 8, 2014. The court

29

noted, however, that '[a]ll delay resulting from the Motion for Relief from Prejudicial Joinder shall be charged to the defendant.'  Hence, the speedy trial clock stopped upon initiation of appellant's first trial."

(Doc. No. 10-1, Exh. 37.)  *See also State v. McGowan*, Case No. 2015-A-0015 (11th Dist. Ct. App. Ohio May 23, 2016).

Here, McGowan argues appellate counsel was ineffective for failing to argue his speedy trial rights were violated under both state and federal law.  Under Ohio's speedy trial statute, "[a] person against whom a charge of felony is pending. . . shall be brought to trial within two hundred seventy days after the person's arrest." Ohio Rev. Code §2945.71(C)(2).  That statute further provides, however, that: "For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  Ohio Rev. Code § 2945.71(E).  In the instant case, the state appellate court determined (and McGowan does not contest) that McGowan was held in jail during the pendency of the proceedings against him and, thus, the State was required to try him within 90 days.

The state appellate court carefully reviewed the record and determined only 50 days counted towards the 90 day time limit, properly running the speedy trial clock from McGowan's June 24, 2014 arrest.  McGowan has not drawn this Court's attention to any irregularity in the state appellate court's calculation and application of Ohio's speedy trial statute, nor does this Court perceive any clear error.  Indeed, McGowan argues only that "*in the absence of any tolling event*, the trial court had to find [him] guilty of Robbery, Kidnapping, and Grand Theft by September 23rd, 2014."  (Doc. No. 12 at 14) (emphasis added).  He fails, however, to argue or direct this Court's attention to any authority indicating the state appellate court improperly

30

identified and/or calculated the various tolling events discussed in its May 2016 decision.[9]  As

such, the Court finds the state appellate court reasonably concluded appellate counsel's failure to

raise a state speedy trial claim cannot have resulted in ineffective assistance.  Counsel was not

required to raise meritless assignments of error that did not have a reasonable probability of

changing the result of McGowan's appeal.  *See Hand*, 871 F.3d at 410 (finding the "'[m]ere

failure to raise a potentially viable claim is not enough, as '[a]ppellate counsel need not raise

every non-frivolous claim on direct appeal.'"); *Sanders*, 529 Fed. Appx. at 521 (same).

McGowan also asserts that appellate counsel should have raised on appeal an alleged

violation of his federal constitutional right to a speedy trial under the Sixth Amendment.[10]  The

Sixth Amendment to the United States Constitution, made applicable to the States through the

Fourteenth Amendment, guarantees a defendant a "speedy and public trial."  U.S. Const. Amend.

VI; *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "The purpose of

the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the

---

[9] McGowan suggests the state appellate court incorrectly found that, because his Motion for Relief for Prejudicial Joinder was granted, the time between his first and second trials did not count towards the 90 day limit as a matter of state law.  As noted above, however, a state court's interpretation of state law binds a federal court sitting in habeas corpus.  *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68.  Moreover, McGowan does not direct this Court's attention to any authority suggesting the state appellate court's determination on this issue was incorrect.

[10] The Court is not entirely convinced that McGowan fairly presented his ineffective assistance claim based on a federal speedy trial violation to the state courts.  Although he referenced the Sixth Amendment in his 26(B) Application, McGowan did not cite any federal authority or otherwise discuss any of the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), discussed *infra*. In light of McGowan's *pro se* status both during this 26(B) proceedings and herein, the Court will nonetheless consider and address his ineffective assistance claim based on the failure to assert a federal speedy trial violation.

anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017). *See also Doggett v. United States*, 505 U.S. 647, 654, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Barker*, 407 U.S. at 532-33.

In *Barker,* the Supreme Court established a balancing test in which the conduct of both the State and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Barker,* 407 U.S. at 530. *See also United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. *See also Doggett*, 505 U.S. at 651; *Brown*, 845 F.3d at 712.

To trigger a speedy trial analysis under the four-factor balancing test, the defendant first must first demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52; *Barker*, 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025–26 (6th Cir.2005) (quoting *Doggett*, 505 U.S. at 652). *See also Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir.2001) (delay is considered the "triggering" factor). Delays approaching one year are considered presumptively prejudicial, while delays of a lesser duration are not *per se* excessive. *See Doggett*, 505 U.S. at 652, n. 1. *See also Brown*, 845 F.3d at 713 (finding a five month delay is not "uncommonly long" and would not trigger analysis of the

remaining *Barker* factors); *United States v. White*, 985 F.2d 271, 275 (6th Cir.1993) (six-and-one-half month delay not presumptively prejudicial); *United States v. Howard*, 218 F.3d 556, 564 (6th Cir.2000) (delay of five months not *per se* excessive).

Here, McGowan was arrested on June 24, 2014. He was brought to trial on the First Merit Bank charges on October 27, 2014, which is 124 days (or a little over four months) after his arrest. McGowan was brought to trial on the Key Bank charges on December 8, 2014, which is 166 days (or five and one half months) after his arrest. In both instances, the delay is well under a year and, therefore, not presumptively prejudicial. *See Brown*, 845 F.3d at 713; *White*, 985 F.2d at 275; *Howard*, 218 F.3d at 564.

Nonetheless, assuming, *arguendo*, that the length of the delay could be considered prejudicial, the remaining *Barker* factors do not weigh in favor of McGowan. The second *Barker* factor is the reason for the delay. In assessing this factor, "the court considers who is most at fault—the government or the defendant." *Brown*, 845 F.3d at 714. *See also United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003). "Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government." *Schreane,* 331 F.3d at 553. Negligence and unexplained delay also weigh against the government, albeit less heavily, "'but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' " *Id.* at 554 (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182).

Here, the state court docket reflects McGowan contributed to the delay by filing a number of pre-trial motions, including motions for a bill of particulars, discovery, a motion to

suppress, and a motion for relief from prejudicial joinder.[11]  McGowan's motion to suppress

alone (which was filed on September 4, 2014 and denied on October 14, 2014) tolled the speedy

trial clock for 40 days.  Moreover, as both the state trial and appellate court noted, the granting

of McGowan's motion for relief from prejudicial joinder on October 14, 2014 necessitated the

scheduling of a second trial on the Key Bank charges.  As noted *supra,* this second trial occurred

on December 8, 2014, a little less than two months after his first trial.  McGowan has not

demonstrated that the state appellate court unreasonably determined the speedy trial clock was

tolled during the two month delay between his first and second trials, given that it was

McGowan's motion that precipitated the delay.  Moreover, even assuming this two month delay

should not have been attributed to McGowan, there is nothing in the record to suggest any bad

faith or harassment on the part of the State relating to the scheduling of McGowan's second trial.

The second *Barker* factor, therefore, does not weigh in McGowan's favor.

The third factor (i.e., whether the defendant asserted his speedy trial rights) weighs in

McGowan's favor, as the record reflects he filed a "Motion for Discharge Speedy Trial

Violation" in the state trial court on October 27, 2014.  However, the last *Barke*r factor,

prejudice, does not weigh in McGowan's favor.  As the Sixth Circuit has explained, this factor

"should be assessed 'in the light' of three interests: (1) to prevent oppressive pretrial

---

[11] Specifically, the state court docket reflects McGowan filed motions for a bill of particulars
and for discovery on July 31, 2014. The State responded on August 18 and 21, 2014,
respectively. McGowan then filed another set of motions for a bill of particulars and for
discovery on August 28, 2014, to which the State responded on September 12, 2014.
McGowan filed his motions to suppress and for relief from prejudicial joinder on September
4, 2014. On October 14, 2014, the state trial court denied the motion to suppress and granted
the motion for relief from prejudicial joinder. *See* Docket Sheet for *State v. McGowan*,
Ashtabula County Court of Common Pleas Case No. 2014 CR 378.

incarceration, (2) to minimize anxiety and concern, and (3) to minimize damage to the defense. *Barker*, 407 U.S. at 532. *See also Brown*, 845 F.3d at 716. Here, McGowan makes no argument as to how he was prejudiced by any perceived delay in bringing him to trial. Under these circumstances, the Court finds that appellate counsel's failure to raise a federal constitutional speedy trial claim cannot have resulted in ineffective assistance, as there is no reasonable probability that McGowan could have prevailed on this issue on appeal.

Accordingly, and for all the reasons set forth above, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to raise state and/or federal speedy trial claims on direct appeal. It is therefore recommended McGowan's second ground for relief be denied.

### 3.    Ground Three

In his Third Ground for Relief, McGowan argues appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to suppress. (Doc. No. 1 at 8.) He maintains that "while he did waive his Miranda rights prior to confessing to the First Merit Bank Robbery (occurring on June 24, 2014), he did not waive his rights prior to confessing to the Key Bank Robbery (occurring on March 15, 2014) as only one waiver was provided and both confessions were not recorded." (*Id.*)

McGowan raised an ineffective assistance claim based on the failure to challenge the denial of his motion to suppress, in his first App. R. 26(B) Application filed January 21, 2016. (Doc. No. 10-1, Exh. 35.) The state appellate court considered this claim on the merits and rejected it as follows:

Appellant's third proposed assignment of error provides:

35

"Appellate Counsel Michelle French was ineffective for failure to raise the court's denial of Defendant's Motion to Suppression violation of the 4th Amendment of the U.S. Constitution." (Sic.)

Appellant contends appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to suppress evidence. Appellant asserts while he did waive his Miranda rights prior to confessing to the First Merit Bank robbery (occurring on June 24, 2014), he did not waive his rights prior to confessing to the Key Bank robbery (occurring on March 15, 2014). We do not agree.

At the suppression hearing, Officer Roger Wilt testified appellant executed a valid, written Miranda waiver. The state included this waiver as an exhibit. Appellant then provided a written confession for the First Merit Bank robbery. Officer Wilt testified, after appellant confessed to this robbery, he asked appellant if he was involved in the Key Bank robbery. Appellant subsequently provided a written confession to this robbery as well. The state introduced the confession, which indicated appellant was advised of his Miranda rights and he understood the same. Appellant acknowledged these points with his initials and signed the confession. There is nothing to suggest appellant's will was overborne or the statements in the confession were involuntary. Accordingly, the testimony from Officer Wilt, the written Miranda waiver, and appellant's acknowledgement that he was aware of and understood his Miranda rights, were sufficient to establish appellant voluntarily waived his rights before confessing to the Key Bank robbery. Therefore, appellate counsel was not ineffective for failing to raise this issue.

Appellant's third proposed assignment of error lacks merit.

(Doc. No. 10-1, Exh. 37.) *See also State v. McGowan*, Case No. 2015-A-0015 (11th Dist. Ct. App. Ohio May 23, 2016).

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The privilege against self-incrimination applies to the States through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards

36

effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  In *Miranda*, the Supreme Court held:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning ... [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 478–79.  *Miranda* warnings are intended to guard against the coercion inherent in a police-dominated environment where the interplay between interrogation and custody would " 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." *Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (quoting *Miranda*, at 457–58, 86 S.Ct. 1602).

However, a suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444.  This inquiry "has two distinct dimensions." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). *See also Daoud v. Davis*, 618 F.3d 525, 529 (6th Cir. 2010).  As the Supreme Court has explained:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran*, 475 U.S. at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

In the instant case, McGowan filed a Motion to Suppress statements he made to Geneva police officers on June 24, 2014, in which he confessed to both the First Merit and Key Bank robberies.  (Doc. No. 10-1, Exh. 4.)  McGowan argued the statements were not voluntary because they were obtained by the use of coercive police activity.[12]  (*Id.*)  Specifically, he maintained "the police officers told him that if he admitted everything then [his co-defendant and girlfriend] Michelle Roseling would not charged or indicted" for either robbery.  (*Id.* at PageID# 121.)

The trial court conducted a hearing on McGowan's Motion on October 8, 2014, during which McGowan and Geneva Police Officers Joe Cooper, Roger Wilt, and Derrick Yopp testified.  (Doc. No. 10-2.)  Officer Wilt testified he was on duty on June 24, 2014 (the date of the First Merit Bank robbery) when he "kind of stumbled on some loose currency that was floating in the air and on the ground on the corner of Park Street and South Broadway."  (*Id.* at Tr. 19.)  He stopped to gather it, and then "saw a plastic bag that was just stuffed with cash, and there was a blue hat.  It all had red dye on it."  (*Id.*)  Officer Wilt radioed dispatch and was subsequently advised that "there was a caller that was behind a vehicle that was discarding currency out the window."  (*Id.* at Tr. 19-20.)  Shortly thereafter, Officer Wilt learned that the vehicle had been "spotted" and that other officers had stopped the vehicle.  (*Id.* at Tr. 20.)  Wilt remained in the vicinity of Park and South Broadway, and secured the loose currency and plastic bag.  (*Id.*)

Meanwhile, Officer Cooper testified he was made aware of the First Merit Bank robbery

---

[12] McGowan also argued he "did not understand the situation due to his mental capacity." (Doc. No. 10-1, Exh. 4.)  He withdrew this argument, however, during the suppression hearing.  (Doc. No. 10-2 at Tr. 6.)

and the suspect vehicle.  (*Id*. at Tr. 12.)  He located the vehicle and made a traffic stop.  (*Id*.)

The vehicle was driven by a female (later identified as co-defendant Michelle Roseling) and

McGowan was in the passenger seat.  (*Id*. at Tr. 12-13.)  Officer Cooper observed money

covered in red dye in the back seat of the vehicle, as well as a strong smell of pepper spray

which he surmised came from "the dye pack that was in the money."  (*Id.* at Tr. 14.)  When back

up arrived, he arrested both McGowan and Roseling.  (*Id*. at Tr. 14-15.)  Before he placed

McGowan in the police cruiser, Officer Cooper advised him of his Miranda rights.  (*Id*. at Tr. 14-

15.)  McGowan indicated that he understood.  (*Id*.)

McGowan was transported to the Geneva City Jail, where he spoke with Officer Wilt at

approximately 2:00 p.m. that day.  (*Id*. at Tr. 15, 20-21.)  Officer Wilt testified that he first

gathered evidence; i.e., swabbed McGowan's hands, took his clothing, and took several pictures.

(*Id*. at Tr. 21.)  Officer Wilt stated that, once McGowan changed into a jail uniform, he was

given his Miranda warning, which was presented on a written waiver form.  (*Id*. at Tr. 22.)  Wilt

testified McGowan initialed each line of the form, which was admitted as an Exhibit at the

hearing.  (*Id*.)  *See also* Doc. No. 10-1 at PageID#145.  In this waiver form, McGowan indicated

(among other things) that he understood he had the right to remain silent and to talk to a lawyer,

and that he could "decide at any time to exercise these rights and not answer any questions or

make any statements."  (Doc. No. 10-1 at PageID#145; Doc. No. 10-2 at Tr. 22-24.)

McGowan's waiver was witnessed by the Chief of Police.  (Doc. No. 10-2 at Tr. 22.)  McGowan

then confessed to the First Merit Bank robbery and completed a lengthy and detailed Voluntary

Statement which was admitted as an Exhibit at the suppression hearing.  (*Id*. at Tr. 24-26.)

Directly after obtaining McGowan's written confession to the First Merit Bank robbery,

Officer Wilt told McGowan that he wanted to talk to both him and Ms. Roseling about "a previous bank robbery that happened in Key Bank" in March 2014.  (*Id.* at Tr. 26, 27.)  Wilt testified he wanted to talk to McGowan about the Key Bank robbery because of several similarities between that robbery and the First Merit Bank robbery, including similarities in the physical descriptions of the suspect and the manner/method of the robberies.  (*Id.* at Tr. 26-27.)

Officer Wilt testified McGowan asked if he could speak to Ms. Roseling.  (*Id.* at Tr. 28.) Wilt agreed, as long as police officers could be present for the conversation.  (*Id.*) McGowan spoke with Ms. Roseling, who denied any involvement in the Key Bank robbery and stated she "didn't want to get in trouble for the Key Bank" robbery.  (*Id.*)  McGowan then provided a separate written statement confessing to the Key Bank robbery.  (*Id.* at Tr. 29.)  McGowan's written statement was admitted as an Exhibit at the suppression hearing.  (*Id.* at Tr. 30.)  Officer Wilt testified (and the statement confirms) that the first question he asked McGowan was "are you aware of your Miranda warning?" (*Id.* at Tr. 30.)  *See also* Doc. No. 12-3 at PageID#1182. McGowan indicated "Yes and I understand my rights" on the written statement, which he also initialed.  (*Id.* at Tr. 30; Doc. No. 12-3 at PageID#1182.)  Officer Wilt testified McGowan's second statement (regarding the Key Bank robbery) was made approximately 15 to 20 minutes after his statement regarding the First Merit Bank robbery.  (Doc. No. 10-2 at Tr. 30-31.)

Officer Wilt testified he did not make any promises to McGowan and, specifically, that at no time did he promise that he would not charge Ms. Roseling with an offense or negotiate any charges on her behalf in exchange for his confession.  (*Id.* at Tr. 29, 31, 37.)  He stated he told McGowan only that "I would do diligence to show that she had not been part of the first one [i.e., the March 2014 Key Bank robbery], if she had truly not."  (*Id.* at Tr. 29.)  Officer Wilt

testified that "I did that. I made multiple calls to her place of employment, and things of that nature. To figure that, to the best of my knowledge, she was not part of the first robbery." (*Id.*) The record reflects Ms. Roseling was, in fact, not charged in connection with the Key Bank robbery.

Officer Yopp testified he was the lead investigator on the Key Bank robbery. (*Id*. at Tr. 42-43.) He stated that, after McGowan provided his written statement confessing to this robbery, he interviewed McGowan and asked a number of follow-up question. (*Id*. at Tr. 45-46.) Officer Yopp testified that any no time did he tell McGowan that Ms. Roseling would not be charged if he confessed to the Key Bank robbery. (*Id*. at Tr. 45-46.)

McGowan then took the stand. He acknowledged both that he signed the Miranda waiver form, and that he understood his rights. (*Id*. at Tr. 48.) He testified as follows:

> Yeah.  This one's voluntary.  I signed my Miranda, and I agreed to everything.
> The second one I didn't get a Miranda.  I was told that if I gave a statement about
> this, Michelle Rosling [sic] would not be charged for either crimes.  And they said
> the prosecutor was not available at the time, and they would see if they could get
> the charge dropped in the morning, which would be June 25th.

(*Id.* at Tr. 49-50.) McGowan further testified an unidentified police officer "said he could see if he would talk to . . . the prosecutor in the morning and see if they could get the charges dropped against her, if I made the statement about the Key Bank robbery." (*Id*. at Tr. 52.)

McGowan acknowledged that he provided his written statement about the Key Bank Robbery approximately 10 or 15 minutes after providing his First Merit Bank statement. (*Id*. at Tr. 53.) While he stated that he did not know that his written Miranda waiver "carried forward" (Doc. No. 10-2 at Tr. 50-51), he testified as follows on cross:

> Q:      Now when you signed this statement [about the Key Bank robbery], that
>         was after supposedly this conversation took place, correct?

41

A:      Yes.

Q:      And the very first question [recorded in his written statement regarding the Key Bank robbery is], are you aware of your Miranda warnings, right?

A:       Yes.

Q:      So you were given Miranda, correct?

A:       Yes.

Q:      And you're a smart guy, so you're aware of the Miranda warnings.

A:      Right.

Q:      And you initialed this statement AM.  Is that your initials?

A:       Yes.

Q:      Okay.  So you were given Miranda for the second statement?

A:       Yeah.  According to this, yeah.  Yeah.

Q:      Well you signed it.

A:      Mm hmm.  I did.

(*Id.* at Tr. 55.)  The trial court then denied McGowan's motion, finding McGowan's testimony that officers promised him Ms. Roseling would not be charged if he confessed to the Key Bank robbery was "diametrically opposed to what the Court has heard from the police officers." (*Id.* at Tr. 60-62.)

The Court first notes that the only issue expressly raised in McGowan's January 2016 App. R. 26(B) Application regarding this issue is that appellate counsel was ineffective for failing to challenge the denial of his motion to suppress on the grounds that he was not provided a second Miranda warning before confessing to the Key Bank robbery.  The Court finds the state appellate court reasonably concluded that appellate counsel was not ineffective for failing to

42

raise this issue for the following reasons.

First, as set forth *supra*, the transcript of the suppression hearing demonstrates that McGowan was repeatedly advised of his Miranda rights.  Officer Cooper testified that, when he arrested McGowan on June 24, 2014, he advised McGowan of his Miranda rights prior to placing him in the police cruiser for transport to the Geneva City Jail. (Doc. No. 10-2 at Tr. 14-15.)  Officer Cooper further testified McGowan indicated that he understood those rights.  (*Id*.)  Officer Wilt then testified that, once McGowan was at the City Jail, he was again read his Miranda rights, which were this time presented on a written waiver form.  (*Id*. at Tr. 22.)  Wilt testified McGowan initialed each line of the form, indicating (among other things) that he understood he had the right to remain silent and to talk to a lawyer, and that he could "decide at any time to exercise these rights and not answer any questions or make any statements."  (*Id.* at Tr. 22-24; Doc. No. 10-1 at PageID#145.)  McGowan expressly testified at the suppression hearing that he voluntarily waived his Miranda rights when he signed this written Miranda waiver form and that he "agreed to everything." (*Id.* at Tr. 49-50.)

Officer Wilt then testified that, after McGowan signed the Miranda waiver and confessed to the First Merit Bank robbery, he told McGowan he wanted to talk to him about the March 2014 Key Bank robbery.  Wilt stated that, after McGowan spoke with Ms. Roseling, he agreed to speak with Officer Wilt about the robbery and complete a voluntary written statement.  Officer Wilt testified (and McGowan's statement confirms) that the first question he asked McGowan was "are you aware of your Miranda warning?" (*Id*. at Tr. 30.)  *See also* Doc. No. 12-3 at PageID#1182.  McGowan indicated "Yes and I understand my rights" on the written statement, which he also initialed.  (*Id*. at Tr. 30; Doc. No. 12-3 at PageID#1182.)  Officer Wilt testified

McGowan's second statement (regarding the Key Bank robbery) was made approximately 15 to 20 minutes after his statement regarding the First Merit Bank robbery.  (Doc. No. 10-2 at Tr. 30-31.)  Notably, McGowan confirmed that, when he was questioned about the Key Bank robbery, he was first reminded of his Miranda rights and indicated that he understood them.  (*Id*. at Tr. 55.)

   In light of the above, the state appellate court was not unreasonable in determining that appellate counsel was not ineffective for failing to argue McGowan was not Mirandized prior to providing his written confession to the Key Bank robbery.  McGowan himself acknowledged that he was, in fact, reminded of his Miranda rights prior to confessing to the Key Bank robbery. (Doc. No. 10-1 at Tr. 55.)  He further acknowledged that understood those rights before providing his voluntary statement confessing to the Key Bank robbery.  (*Id.*)  *See also* Doc. No. 12-3 at PageID#1182.)  Finally, McGowan acknowledged that, no more than 20 minutes prior to confessing to the Key Bank robbery, he voluntarily waived his Miranda rights by completing a written Miranda waiver form.  (*Id*. at Tr. 49-50, 53.)

   McGowan appears to also argue, however, that his Miranda waiver relating to the Key Bank robbery was not valid because it was not voluntary.  Specifically, he maintains that the police promised him that, if he confessed to the Key Bank robbery, they would talk to the prosecutor and ensure that Ms. Roseling was not charged for either the First Merit Bank or Key Bank robberies. (Doc. No. 12 at 17-30.)

   The Court finds the state appellate court reasonably concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal.  While McGowan testified that Officer Wilt and another unidentified police officer made this promise, the trial court found that

44

McGowan's testimony was "diametrically opposed to what the Court has heard from the police officers," all of whom testified that no promises were made to McGowan in exchange for his confession. (Doc. No. 10-2 at Tr. 62.) The trial court also noted that "a follow up investigation apparently satisfied law enforcement that [Ms. Roseling] was not involved in the earlier robbery of Key Bank, and she has not been charged with that." (*Id*. at Tr. 61.) The court noted that the only charges Ms. Roseling faced related to the First Merit Bank robbery, "in which, at least the testimony is, that she was observed driving the car which had been identified as the car in which the alleged robber had left the scene of the bank, and in fact the very car that Mr. McGowan was in at the time that the vehicle was stopped and he was arrested." (*Id*.) The trial court made clear that, based on the above, it simply did not find credible McGowan's testimony that he was promised Ms. Roseling would not be charged for either robbery if he confessed. (*Id.* at Tr. 60-62.)

In light of the above, the state appellate court was not unreasonable in concluding that appellate counsel was not ineffective for failing to argue that McGowan's Miranda waiver relating to the Key Bank robbery was involuntary. Appellate counsel could reasonably have concluded that McGowan would not have succeeded in arguing on appeal that the trial court erred in its evaluation of the testimony offered at the suppression hearing and subsequent finding that McGowan was not credible when he testified his Miranda waiver was the product of coercion.

Lastly, McGowan asserts, in his Traverse, that appellate counsel was ineffective for failing to argue that his confession to the Key Bank robbery was involuntary. As an initial matter, it does not appear that McGowan sufficiently raised this issue in his January 2016 App.

45

R. 26(B) Application.  Moreover, there does not appear to be a vehicle for him to raise this claim in the state courts at this time, rendering it both unexhausted and procedurally defaulted. Nonetheless, even if the Court were to consider it, it would find any such claim to be without merit for the following reasons.

The Sixth Circuit has explained the legal standard for involuntary confessions, as follows:

> The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life liberty, or property, without due process of law." U.S. Const. amend. XIV. "[C]ertain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).  In order to determine whether a confession was voluntarily made, a court must evaluate the totality of the circumstances surrounding the interrogation to determine whether the defendant's "will [was] overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' " *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "[C]oercion can be mental as well as physical." *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). In addition to "the crucial element of police coercion," courts consider "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health" and the failure of police to advise the defendant of his Miranda rights. *Withrow v. Williams*, 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (internal citations omitted); *see also Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041 (discussing factors). If a defendant has been advised of his Miranda rights and voluntarily waived them, it will be difficult to claim that his confession was nonetheless involuntary. *Missouri v. Seibert*, 542 U.S. 600, 609, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality opinion) (noting that "maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina"); *see also Berkemer*, 468 U.S. at 433 n. 20, 104 S.Ct. 3138 ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.").

*Loza v.Mitchell*, 766 F.3d 466, 477-478 (6th Cir. 2014).  *See also United States v. Johnson*,

2017 WL 2119345 at * 4 (N.D. Ohio May 16, 2017).

Here, appellate counsel was not ineffective for failing to argue McGowan's confession to the Key Bank Robbery was involuntary. First, as noted above, McGowan was repeatedly advised of his Miranda rights prior to confessing to the Key Bank Robbery, and indicated in both his written waiver form and voluntary statement that he understood his Miranda rights and had agreed to waive them. *See Missouri v. Seibert*, 542 U.S. 600, 609, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (noting that "maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina"). Second, McGowan has not argued that his interrogation was unduly long, or that he was otherwise subjected to harsh interrogation conditions. Indeed, McGowan himself acknowledged during the suppression hearing that his confession to the Key Bank robbery occurred only approximately 10 to 15 minutes after he was initially interrogated by Officer Wilt regarding the First Merit Bank robbery. Moreover, McGowan has not argued that his physical or mental condition rendered the circumstances of the interrogation coercive in any respect.

Lastly, appellate counsel could reasonably have concluded McGowan would not be able to demonstrate that Geneva police officers deceived him into confessing to the Key Bank robbery. As the state trial court noted, Ms. Roseling was not, in fact, charged in the Key Bank robbery. Moreover, as also observed by the state trial court, the circumstances of Ms. Roseling's arrest for the First Merit Bank robbery (i.e., that, shortly after the robbery occurred, she was found driving the get away car with both McGowan and money covered in red dye) were such that it would not have been reasonable for McGowan to have believed she would not be charged for that crime. Under these circumstances, the Court finds appellate counsel was not

47

deficient for making the strategic choice not to raise this issue on direct appeal.

Accordingly, and for all the reasons set forth above, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to challenge the denial of McGowan's motion to suppress on direct appeal.  It is therefore recommended McGowan's third ground for relief be denied.[13]

### 4.    Ground Four

In his Fourth Ground for Relief, McGowan argues appellate counsel was ineffective for failing to "raise allied offense merger and lesser included offense."  (Doc. No. 1 at 10.)  The nature of McGowan's argument is not entirely clear but he appears to be asserting appellate counsel should have argued that the trial court erred in merging the kidnapping and robbery convictions for Counts 4 and 5 and thereafter sentencing him on the kidnapping charge (which is a second degree felony) rather than the robbery charge (which is a third degree felony.) (Doc. No. 12 at PageID#1150.)

McGowan raised an ineffective assistance claim based on the failure to argue the trial court erred in sentencing him on the kidnapping (rather than robbery) conviction in his first App. R. 26(B) Application filed January 21, 2016.  (Doc. No. 10-1, Exh. 35.)  The state appellate court considered this claim on the merits and rejected it as follows:

Appellant's fifth proposed assignment of error states:

"Defendant    Andre    McGowan    was    denied    the    effective    assistance    of

---

[13] In the Traverse, McGowan requests an evidentiary hearing regarding the issues raised in connection with appellate counsel's failure to challenge the denial of his motion to suppress on direct appeal.  The Court determines this issue can be decided based on the record before the state court and, therefore, it is recommended that McGowan's request be denied.

appellate counsel in violation of the 51h & 14th Amendments of the U.S. Constitution."

Appellant contends appellate counsel was ineffective for failing to argue the trial court committed error when it sentenced him for kidnapping where the court determined it was an allied offense of similar import to robbery. Appellant appears to argue the trial court should have sentenced him for robbery. Although appellant was tried and found guilty of both kidnapping and robbery, he could only be convicted and sentenced for one of these charges. And "[i]t is for the [s]tate to decide which of the two charges will merge with the other." *State v. Burrell*, 11th Dist. Portage No. 2009-P-0060, 2011-Ohio-2091, ¶72, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 244 (1976) ("The choice is given to the prosecution to pursue one offense or the other, and it is plainly the intent of the General Assembly that the election may be of either offense"). The state elected to proceed on the kidnapping count and there was no error in this election. Appellate counsel was not ineffective for not challenging the merger issue on appeal.

(Doc. No. 10-1, Exh. 37.) *See also State v. McGowan*, Case No. 2015-A-0015 (11th Dist. Ct. App. Ohio May 23, 2016).

For the following reasons, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to argue the trial court erred in sentencing him on the kidnapping (rather than robbery) conviction.  As set forth *supra*, in his December 2014 trial regarding the Key Bank incident, McGowan was convicted of robbery, kidnapping, and grand theft as set forth in Counts Four, Five, and Six of the indictment.  (Doc. No. 10-1, Exh. 19.)  The trial court conducted a sentencing hearing on February 6, 2015, during which it determined that all three counts merged for purposes of sentencing.  (Doc. No. 10-1, Exh. 20.; Doc. No. 10-5 at Tr. 8-9.)  The trial court then asked the State on which Count it wished the Court to sentence McGowan, and the State elected to proceed on the kidnapping conviction in Count Five.  (Doc. No. 10-1, Exh. 20; Doc. No. 10-5 at Tr. 9.)

The state appellate court determined that, when a trial court finds that two offenses are

49

allied offenses that merge for purposes of sentencing, "it is for the State to decide which of the two charges will merge with the other."[14]  (Doc. No. 10-1, Exh. 37.)  As has been noted *supra*, a state appellate court's interpretation of Ohio law is binding in these federal habeas proceedings. *See Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986) ("A federal court must accept a state court's interpretation of that state's statutes and rules of practice.").  In light of the state appellate court's finding that state law allows the prosecution to determine on which merged offense a defendant should be sentenced, the Court finds McGowan cannot demonstrate that appellate counsel was ineffective for failing to raise this issue on appeal.

Accordingly, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to argue the trial court erred in sentencing him on the kidnapping (rather than robbery) charge set forth in Count Five of the indictment.  It is therefore recommended McGowan's fourth ground for relief be denied.

---

[14] *See State v. Whitfield,* 124 Ohio St.3d 319, 324 (2010) ("The General Assembly has made clear that it is the state that chooses which of the allied offenses to pursue at sentencing, and it may choose any of the allied offenses."); *State v. Williams*, 148 Ohio St.3d 403 (2016) ("when a sentencing court concludes that an offender has been found guilty of two or more offenses that are allied offenses of similar import, in conformity with *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, it should permit the state to select the allied offense to proceed on for purposes of imposing sentence and it should impose sentence for only that offense."); *State v. Brentlinger*, 90 N.E.3d 200, 214 (Ohio App.3rd Dist. 2017).

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date:  March 6, 2019                                      *s/ Jonathan Greenberg*

                                                         Jonathan D. Greenberg
                                                         United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters, 638 F.2d 947 (6th Cir. 1981); Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).***